# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2022

Lyle W. Cayce
Clerk

No. 19-20873

Donald Lloyd Davis, Jr.,

*Plaintiff—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:19-CV-1729

Before Smith, Wiener, and Southwick, *Circuit Judges*.

Leslie H. Southwick, *Circuit Judge*:

Donald Lloyd Davis, Jr., an inmate in Texas state prison, brings a Section 1983 suit alleging the Director of Texas Department of Criminal Justice — Correctional Institutions Division and unidentified prison officials were deliberately indifferent to his medical needs in violation of the Eighth Amendment. The district court requested the Texas State Attorney General's Office provide a supplemental administrative report, known as a

No. 19-20873

*Martinez* report, to develop the record.  Upon reviewing the report, the district court dismissed Davis's claims as frivolous and for failure to state a claim.  We AFFIRM in part, VACATE in part, and REMAND.

## FACTUAL AND PROCEDURAL BACKGROUND

Donald Lloyd Davis, Jr., an inmate presently in Texas state prison, filed a pro se complaint under 42 U.S.C. § 1983 against the Director of the Texas Department of Criminal Justice — Correctional Institutions Division ("TDCJ"), now Bobby Lumpkin, and multiple unidentified medical providers within the prison system for violating his Eighth Amendment right to adequate medical care.

He alleges around September 4, 2017, in the Polansky Unit in Livingston, Texas, an officer applied "an unwarranted use of force" against him and intentionally fractured his foot and ankle.  As a result, he experienced constant pain and was unable to walk or put pressure on his foot.  On September 6, officers sent Davis to the medical unit because his foot was discolored and swollen.  A provider in the medical unit took x-rays of his foot and concluded there was no fracture.  The provider gave him crutches and instructed him to take ibuprofen for ten days for the pain.

He did not receive the ibuprofen as prescribed for the next two days.  He experienced so much pain that he claims that he "lost his will to live" and attempted suicide.  To provide mental health treatment after this incident, the prison transferred Davis to the Jester IV Unit.  He alleges before leaving the Polansky Unit for the Jester Unit, the staff took his crutches even though his foot was clearly swollen and discolored.

On September 12, 2017, while in the Jester Unit, he complained he was in pain, so the medical unit ordered another set of x-rays.  Before prison providers could perform the x-rays, he was transferred to another unit, the Huntsville Unit, so the x-rays were administered the next day, on September

No. 19-20873

13, 2017. He says a provider at the Huntsville Unit erroneously relied on his initial medical evaluation from the Polansky Unit to conclude that he was not suffering any injuries or other medical issues in his foot.

Davis states that he continued to file grievances because he was experiencing foot pain. Eventually, he returned to the Jester Unit. On September 24, 2017, 20 days after his injury, the Jester Unit sent him to the hospital to receive a CAT scan. He was in the hospital briefly on September 24 but was sent back 29 days later on October 23. At this visit, medical personnel told him he had a broken toe and sprained ankle. The hospital provided Plaintiff with a medical boot to treat these injuries. After his hospital visit, he was sent to the Ramsey Unit where he continued to complain of pain.

Davis alleges Lumpkin and the various prison medical providers involved in treating his foot violated his Eighth Amendment rights because they were deliberately indifferent to his medical needs. He argues they failed to provide him sufficient medical care because despite the obvious injury to his foot, his requests to receive medical treatment across five different prison units, and his numerous filed grievances, he was not properly treated until 49 days after his injury. He alleges the failure to treat him and delay in treatment occurred because the prison providers intentionally misdiagnosed him as a cover-up scheme to protect the officers who caused the injury to his foot.

Davis pursued his pro se complaint before the district court *in forma pauperis*. To help develop the factual record, the district court requested that the Texas Attorney General look into Davis's claims and submit a supplemental report to the district court. After reviewing that report, the district court dismissed Davis's complaint as legally frivolous and for failure to state a claim upon which relief can be granted. Davis timely appealed this dismissal and proceeds *in forma pauperis* on appeal.

No. 19-20873

## DISCUSSION

Under the Prison Litigation Reform Act ("PLRA"), district courts must dismiss prisoners' *in forma pauperis* claims if they allege frivolous actions or fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii). We review a district court's dismissal of an *in forma pauperis* prisoner's complaint as frivolous for abuse of discretion and dismissal for failure to state a claim *de novo*. *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). Here, the district court cited 28 U.S.C. § 1915(e)(2)(B) generally, noting Davis's claims were dismissed both as frivolous and for failure to state a claim, so we will review the issues *de novo*. *Id.*

In reviewing whether a district court properly dismissed a prisoner's complaint for failure to state a claim, we apply the same standard as dismissals under Federal Rule of Civil Procedure 12(b)(6). *Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998). Thus, a prisoner's complaint "will survive dismissal . . . if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quotation marks and citation omitted). A prisoner's claim will be dismissed as frivolous under the PLRA "if it has no arguable basis in law or in fact." *Ruiz*, 160 F.3d at 274–75.

Davis argues the district court erred in dismissing his deliberate indifference claims.[1] As a pro se plaintiff, Davis's pleadings and arguments

---

[1] Davis may have raised a claim of excessive force in his complaint, as he stated an officer's "use of force" caused his foot injury. He did not pursue this claim at any point in the district court proceedings but stated again on appeal that an "officer used excessive force against him and he sustained a broken ankle." Beyond this statement, he did not make any argument regarding an excessive force clam in his brief. Although pro se plaintiffs' briefing is construed liberally, if a pro se plaintiff fails to argue claims in the body of his brief, those claims are considered abandoned. *Yohey v. Collins*, 985 F.2d 222, 224–

are construed liberally. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). The Supreme Court has interpreted the Eighth Amendment's prohibition against cruel and unusual punishment to "impose[] a duty on prison officials to 'ensure that inmates receive adequate . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). A prison official violates these rights when "his conduct demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

To show an official was deliberately indifferent, a plaintiff must demonstrate that the official is aware that an "inmate[] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Deliberate indifference poses an "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice" is not enough to meet this standard. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Mere disagreement with medical judgments or treatment is also insufficient. *Id.* Instead, a plaintiff must show prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Where the plaintiff alleges a delay in medical treatment, that delay must have resulted in

---

25 (5th Cir. 1993). Davis provided no argument that could be construed to challenge dismissal of an excessive force claim; any excessive-force claim is therefore abandoned. *Id.*

substantial harm for the prisoner to recover. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

Davis claims both the Director of the TDCJ and the prison officials directly involved were deliberately indifferent to his medical needs. The district court dismissed his claims against all defendants. As to the claim against the Director, the district court reasoned that Davis failed to state a claim because Davis did not allege that the Director was involved in any of his treatment or the failure to treat him. The district court also stated that Davis did not allege the deliberate indifference was the result of a prison policy that then could be tied to the Director.

We agree. Davis did not mention any relationship between the allegedly unconstitutional acts and the Director or any prison policy. Without such an allegation, Davis cannot state a claim against him. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) (explaining that personal involvement, not mere supervisory liability, is required to state a section 1983 claim).

Next, we turn to Davis's claims against the several unidentified prison medical providers. The district court dismissed these claims after reviewing the supplemental report it requested from the Texas Attorney General. To assist district courts in discerning whether *in forma pauperis* prisoner complaints may proceed, the Fifth Circuit has adopted a procedure from the Tenth Circuit that allows the district court to obtain a supplemental record to further flesh out the facts behind a prisoner's complaint. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Cay v. Estelle*, 789 F.2d 318, 323 n.4 (5th Cir. 1986), *overruled on other grounds*, *Denton v. Hernandez*, 504 U.S. 25 (1992)); *see also Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). That record is known as a *Martinez* report, or as a *Martinez* hearing if the information is obtained through a hearing. *See Cardona v. Taylor*, 828 F.

App'x 198, 201 (5th Cir. 2020); *Janke v. Price*, 43 F.3d 1390, 1392 (10th Cir. 1994) (using *Martinez* hearing).  A *Martinez* report is produced as a result of prison officials' investigating the prisoner's complaints and compiling an administrative record that acts like an affidavit to aid the district court in screening the complaint.  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Simkins v. Bruce*, 406 F.3d 1239, 1240 n.2 (10th Cir. 2005).

We have not published much caselaw on the proper use of a *Martinez* report.  Multiple panels of this court have held that a district court may not rely on information in a *Martinez* report if it conflicts with the prisoner's pleadings.  *Cardona*, 828 F. App'x at 201 (collecting cases).  The Tenth Circuit, where the *Martinez* report originated, follows the same approach. *Hall*, 935 F.2d at 1109; *see also Parker v. Carpenter*, 978 F.2d 190, 191 n.2 (5th Cir. 1992) (explaining we adopted the *Martinez* report from the Tenth Circuit).  In doing so, the Tenth Circuit has explained that the function of *Martinez* reports is to "sort and clarify issues raised in a pro se complaint," so it would be improper for the district court to use the report's information to resolve disputed factual issues.  *Janke*, 43 F.3d at 1392.

We conclude that if the *Martinez* report conflicts with the *pro se* plaintiff's allegations, the district court must accept the plaintiff's allegations as true, not the records in the report.  *See Williams v. Mason*, 210 F. App'x 389, 390 (5th Cir. 2006).  In *Williams*, a panel of this court vacated the district court's dismissal of a prisoner's deliberate indifference claim when the district court improperly relied on a *Martinez* report.  *Id.*  The prisoner alleged he suffered continuing injuries because the defendants failed to provide him with dentures or adapt his food diet and permissions.  *Id.*  The district court relied on a *Martinez* report to refute the plaintiff's claims that he had a serious medical need for dentures and dismissed his claims as both frivolous and for failure to state a claim.  *Id.*  The panel vacated this decision because, as alleged, it was possible the prisoner could be granted relief.  *Id.*

Similarly, another panel discussed the inappropriateness of a district court relying even on video evidence submitted with a *Martinez* report to characterize a prisoner's injuries differently from those the plaintiff alleged. *Hamer v. Jones*, 364 F. App'x 119, 123 (5th Cir. 2010). The panel ultimately resolved the case on other grounds but explained it was improper to adopt information in a *Martinez* report in the face of a plaintiff's conflicting allegations no matter how compelling. *Id.*

Here, the district court relied on the *Martinez* report's medical records in the face of Davis's conflicting allegations to conclude Davis's treatment was sufficient and any delay in treatment was not due to deliberate indifference. Specifically, Davis alleges the treatment he received leading up to his final hospital visit where he received his fracture diagnosis and his medical boot was intentionally inadequate because it was part of a cover-up scheme. In dismissing this claim, the district court relied on three parts of the *Martinez* report: (1) the amount of medical records in the *Martinez* report to show Davis received adequate care; (2) conclusions in records for two of Davis's visits that stated there was no evidence of fracture to show he received appropriate medical care; and (3) the records showing his mental health treatment to show the delay in treatment was caused by his mental health conditions.

All these conclusions conflict with Davis's allegations. On the first and second, Davis alleges that even if he received multiple visits, the medical staff deliberately ignored his injury to pursue their cover-up scheme and that they treated him incorrectly by purposefully misreading his charts in this same pursuit. On the third conclusion, he alleges the delay was also in an effort to pursue this coverup scheme. Taking Davis's allegations as true, it is possible relief could be granted in his favor. *See, e.g.*, *Domino*, 239 F.3d at 756 (showing claim that a prisoner was intentionally treated incorrectly constitutes deliberate indifference). The district court therefore should not

have relied on the *Martinez* report to resolve these contentions. Accordingly, we vacate the judgment of the district court on Davis's claims against the unidentified prison officials and remand the case for further proceedings. In doing so, we express no opinion on the ultimate merits of Davis's case.

AFFIRMED in part, VACATED in part, and REMANDED for further proceedings.