# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2023

Lyle W. Cayce
Clerk

————————

No. 21-20241

————————

Albert L. Thompson, Jr.,

*Plaintiff—Appellant*,

*versus*

Texas Department of Criminal Justice; Warden Sanchez; Lieutenant Crawford,

*Defendants—Appellees*.

————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-4059

————————————————————

Before Higginbotham, Southwick, and Willett, *Circuit Judges*.
Patrick E. Higginbotham, *Circuit Judge*:

Albert Thompson suffered a stroke during his incarceration at a Texas prison. He brought a claim under 42 U.S.C. § 1983 alleging that prison staff delayed and impeded his access to emergency medical care after the onset of his stroke symptoms. The district court dismissed his lawsuit as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). We determine that Thompson brings claims of malpractice, falling short of a deprivation of constitutionally secured rights. We AFFIRM the district court's dismissal with a

No. 21-20241

LIMITED REMAND instructing the district court to address Thompson's motion to unseal his medical records.

## I.

Thompson alleges that he suffered a brain stem stroke at approximately 10:30 a.m. on January 11, 2017, while residing at a Texas state prison, that at 10:45 a.m. he told medical staff at the prison's clinic about his symptoms, including difficulty swallowing, and that clinic nurses took Thompson's vitals and examined him but found nothing unusual. The nurses then told him he was "faking" and ordered him to leave the clinic. Thompson returned to his dormitory, where his condition worsened, other inmates took notice, and an inmate called Thompson's sister. Thompson returned to the clinic at 1:30 p.m. complaining of a "stiffening" face, weakness, and disorientation. When he again requested assistance, medical staff told him he had already been evaluated and allegedly threatened him with a disciplinary case if he did not return to his unit. Thompson's sister called the prison repeatedly between 2:25 p.m. and 6:00 p.m., reaching several prison staff members and notifying them of Thompson's condition. When Thompson returned to the clinic for the third time, a nurse examined him and again found nothing abnormal. Medical staff placed him in a holding cell for a further hour and a half without further treatment.

After Thompson returned to the clinic, an unknown party called 911,[1] and an ambulance arrived at the prison at approximately 8:40 p.m. Prison staff told the arriving emergency medical technicians ("EMTs") that Thompson had already received care and continued to accuse him of faking symptoms, but the EMTs insisted on evaluating him. The EMTs determined that Thompson required hospitalization and departed without him around

_____

[1] Thompson's complaint implies that his sister placed the call.

9:15 p.m. A prison vehicle transported Thompson to a local hospital at 10:50 p.m. after he spent another hour and a half in the clinic's holding cell.

At the hospital, Thompson was diagnosed with a brain stem stroke and severe dehydration, as he had been unable to swallow liquids for more than 24 hours. He remained hospitalized for several weeks. Thompson alleges that the 12-hour delay in emergency medical care resulted in central post-stroke pain, neuropathic nerve issues on his right side, facial disfigurement on his left side, and a fall due to dehydration, among other consequences.

Thompson filed a *pro se*, *in forma pauperis* lawsuit against prison medical staff, guards, supervisors, and various state entities.[2] The district court construed Thompson's suit as a § 1983 claim for denial of adequate medical treatment. He also challenged the prison's grievance system and failure to follow state rules and regulations, but he abandoned these issues on appeal.[3] The district court accepted a more definite statement of Thompson's claim but did not conduct a *Spears* hearing.[4] Texas also provided a *Martinez* report,[5] although its record begins at approximately 9:00 p.m. on July 11 and focused on the standard of care provided to Thompson at

---

[2] Thompson also sued several state entities that enjoy sovereign immunity in federal court under the Eleventh Amendment. *See Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998). We therefore do not further address his claims against Texas state agencies on appeal.

[3] *See Roy v. City of Monroe*, 950 F.3d 245, 251 (5th Cir. 2020).

[4] "The purpose of a *Spears* hearing is to determine whether [*in forma pauperis*] status should be granted or the case should be dismissed under 28 U.S.C. § 1915(d)." *Wilson v. Barrientos*, 926 F.2d 480, 481 n.2 (5th Cir. 1991).

[5] A district court may obtain a *Martinez* report from the state "to further flesh out the facts behind a prisoner's complaint" at the screening or dismissal stage. *Davis v. Lumpkin*, 35 F.4th 958, 963 (5th Cir. 2022).

No. 21-20241

the hospital. Although Thompson asked the district court to order a reply, the defendants have yet to answer his complaint.[6]

Proceeding under § 1915(e)(2)(B)(i), the district court dismissed as frivolous *in forma pauperis* filings, finding that Thompson received adequate medical care after transportation to the hospital and determining that Thompson's claims summed to negligence, not to a constitutional tort; that Thompson did not allege facts demonstrating that the defendants—neither staff nor supervisors—were aware of and disregarded a substantial risk of harm to him. Thompson appeals, arguing that the district court (1) erred in resolving disputed facts during screening; (2) erred in concluding that he failed to state a claim; (3) erred in determining that the warden and medical director were not liable as supervisors; and (4) abused its discretion in failing to rule on pending motions.[7]

## II.

A district court may dismiss an *in forma pauperis* complaint under § 1915(e)(2)(B)(i) "if it has no arguable basis in law or fact."[8] We have held that "[a] complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."[9] This court will "review the dismissal of a complaint under 28 U.S.C. § 1915(e)(2)(B)(i) as

---

[6] *See* 42 U.S.C. § 1997e(g)(2).

[7] We liberally construe Thompson's pro se brief. *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). This court did not require the defendants to file a response to Thompson's brief on appeal.

[8] *Ruiz v. United States*, 160 F.3d 273, 274–75 (5th Cir. 1998).

[9] *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

frivolous for abuse of discretion."[10] "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence."[11] Because a district court must find a claim insufficient before holding it frivolous, this deferential review does not necessarily insulate a district court's determination that the *in forma pauperis* plaintiff failed to state a claim, as that is a pure question of law.[12]

A district court may obtain a *Martinez* report to frame its evaluation of a prisoner's *in forma pauperis* claim. "A *Martinez* report is produced as a result of prison officials' investigating the prisoner's complaints and compiling an administrative record that acts like an affidavit to aid the district court in screening the complaint."[13] The report serves only to "sort and clarify issues raised in a pro se complaint."[14] We recently held in *Davis v. Lumpkin* that "if the *Martinez* report conflicts with the *pro se* plaintiff's allegations, the district court must accept the plaintiff's allegations as true, not the records in the report."[15]

---

[10] *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

[11] *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (quoting *United States v. Ragsdale*, 426 F.3d 765, 774 (5th Cir. 2005)).

[12] *Black v. Warren*, 134 F.3d 732, 734 (5th Cir. 1998) ("We . . . employ the same *de novo* standard to review the § 1915(e)(B)(ii) dismissal as we use to review dismissal pursuant to 12(b)(6)."); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.9 (5th Cir. 1993) ("The dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is a question of law."); *accord Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007) (observing that "[e]n route to determining that a claim is frivolous, the district court must determine whether it is legally insufficient, an issue purely of law on which appellate review is plenary" (quoting *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 787 (7th Cir. 1995))).

[13] *Davis*, 35 F.4th at 963 (citations omitted).

[14] *Id.* at 964 (quoting *Janke v. Price*, 43 F.3d 1390, 1392 (10th Cir. 1994)).

[15] *Id.*

No. 21-20241

Thompson argues that the district court erred in resolving various contested facts based on the *Martinez* report. Thompson's complaint alleges that medical staff evaluated him but provided no medical interventions prior to transportation to the hospital, facts that must be taken as true at this stage of litigation.[16] The district court relied on the "more complete record" in the *Martinez* report to elucidate details about these medical evaluations, but we find nothing in the district court's opinion that contradicts the claims in Thompson's initial pleadings. The district court did not, for example, find that the prison nurses provided medical care that Thompson insists never took place. And Thompson agrees that he received significant medical care following his stroke diagnosis.[17]

The law is "clearly established that a prison inmate [can] demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"[18] The plaintiff must allege "a deprivation of

---

[16] Thompson alleges that the district court resolved other facts against him, such as the sufficiency of his care prior to transport or the harm he suffered. The district court did not resolve these allegations based on the *Martinez* report, but rather relied on the facts in Thompson's complaint to determine that he failed to state a claim.

[17] The district court observed as much, noting that "Thompson establishes much of this by his own admission, acknowledging that he received treatment for his stroke."

[18] *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001)); *see also Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) ("Since *Estelle v. Gamble* . . . state officers have been on notice that deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment."). Our sister circuit has commented that "[a] sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Helphenstine v. Lewis County, Kentucky*, 60 F.4th 305, 318 (6th Cir. 2023) (quoting *Griffith v. Franklin County, Kentucky*, 975 F.3d 554, 567 (6th Cir. 2020)).

medical care sufficiently serious to show that 'the state has abdicated a constitutionally-required responsibility to attend to his medical needs.'"[19] To amount to a constitutional violation, delayed medical treatment must result from deliberate indifference that harms the prisoner.[20]

Deliberate indifference exists when an "official knows of and disregards an excessive risk to inmate health or safety."[21] The required mental state amounts to "subjective recklessness,"[22] "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence."[23] And "[u]nder exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk."[24] Negligence and mistakes during treatment do not constitute deliberate indifference.[25] A supervisory official may be held liable under § 1983 for a subordinate's actions in some circumstances, but that supervisor must also show deliberate indifference to

---

[19] *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (quoting *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983)).

[20] *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993).

[21] *Farmer v. Brennan*, 511 US 825, 837 (1994).

[22] *Id.* at 839.

[23] *Id.* at 842.

[24] *Reeves v Collins*, 27 F3d 174, 176 (5th Cir 1994) (citation omitted).

[25] *Farmer*, 511 US at 835; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001).

a harmful failure to train or supervise.[26] We have observed that "[d]eliberate indifference is an extremely high standard to meet."[27]

We have held, for example, that deliberate indifference did not exist where medical staff declined to provide a tuberculin skin test to an inmate who was later found to have tuberculosis.[28] The staff in that case lacked the required knowledge of a substantial risk, as prison policy disfavored asymptomatic tests and medical staff did not know of any active cases of tuberculosis.[29] In another case, we held that a doctor's failure to discover a patient's ulcer during treatment did not amount to deliberate indifference because medical staff did not disregard any known risks to the prisoner.[30] In a case resolved on summary judgment, we concluded that a prison psychiatrist did not disregard a risk when he incorrectly concluded that a prisoner was not a suicide risk while providing mental health services.[31] We also found no deliberate indifference where a prisoner received extensive but ineffective medical treatment related to his leg infection.[32]

In contrast, we reversed a dismissal for frivolousness where the prisoner reported a broken jaw to nursing staff, who refused care and scheduled a future appointment with the prison doctor.[33] Prison medical staff then declined for a week to examine the prisoner or address painful

---

[26] *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998).

[27] *Domino*, 239 F.3d at 756.

[28] *Gibbs*, 254 F.3d at 551.

[29] *Id.* at 550.

[30] *See Stewart v. Murphy*, 174 F.3d 530, 534, 537 (5th Cir. 1999).

[31] *Domino*, 239 F.3d at 756.

[32] *See Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir 2006).

[33] *Harris*, 198 F.3d at 154.

symptoms arising from his recent surgery.[34] We held that the plaintiff stated a claim based on his assertion that the defendants "ignored his urgent and repeated requests for immediate medical treatment for his broken jaw and his complaints of excruciating pain," and that the defendants were "made aware of, and disregarded, a substantial risk to [the prisoner's] health when they denied him treatment."[35] In another case, we found the standard satisfied with allegations that a nurse "refused to provide any treatment to, and ignored the complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems."[36] In addition, "failure to call an ambulance for almost two hours while [a prisoner] lay unconscious and vomiting rises to the level of deliberate indifference" given the obvious nature of the risk.[37]

We first address whether Thompson successfully claims that any defendants knew of a substantial risk of harm to him. The pleadings indicate that several defendants may have known of a health risk. Thompson reportedly informed Nurse Speer of his symptoms in the morning, when Nurse Hampton was also present. In the evening, he visited the clinic again and told Nurse Adewoye about his symptoms. The pleadings lack facts, however, indicating that other defendants subjectively knew of a risk to Thompson's health. Thompson faults Officer George and Nurse Bercauter, who staffed the clinic during the afternoon. But the pleadings show that Bercauter relied on Speer's earlier examination to conclude that there was

---

[34] *Id.* at 155.

[35] *Id.* at 159–60.

[36] *Easter*, 467 F.3d at 464.

[37] *Austin*, 328 F.3d at 210.

"nothing wrong" with Thompson, meaning that Bercauter and George lacked the requisite mens rea.[38]

Thompson also does not allege facts indicating that any supervisors had knowledge of a health risk left unaddressed by staff. Thompson only alleges, for example, that Dr. Hulipas, the facility's medical director, "was made aware of plaintiff's condition, or should have been made aware, per TDCJ's emergency care protocol." But such allegations fall short of facts demonstrating that supervisors knew of a substantial risk of harm to Thompson. And Thompson fails to put forward facts indicating that the facility's supervisors engaged recklessly in relation to broader training and supervision of staff.[39]

We next ask whether any defendant with subjective knowledge of the risk to Thompson disregarded that risk. Thompson states that Speer listened to his complaints and examined him but found no emergency medical issues. Adewoye also examined Thompson and found no abnormalities, theorizing instead that he may have been experiencing psychiatric symptoms. Medical staff failed to properly diagnose Thompson's medical emergency in these evaluations, but they did not disregard Thompson's reported symptoms. There is no indication in the pleadings that medical staff continued to recognize a risk of harm to Thompson following these evaluations, or that staff would have declined medical care had they recognized his condition as requiring activation of emergency protocols.

We conclude that Thompson's claim arises to medical negligence, not deliberate indifference. Any officials who knew of a risk to Thompson acted

---

[38] Officer Yaya was in a similar position, with Thompson admitting that he "chose to defer to medical staff."

[39] *Smith*, 158 F.3d at 912.

No. 21-20241

on their concerns. Under the facts alleged, medical staff likely should have identified Thompson's emergency medical issue but failed to do so. Yet as the Supreme Court has explained, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned" as deliberate indifference and does not arise to a constitutional violation.[40]

## III.

Thompson additionally claims that the district court abused its discretion in failing to rule on four motions pending at the time of dismissal, including a motion to appoint counsel, a motion for leave to file a second amended complaint, an amended motion to strike, and a motion to unseal. Because the district court did rule on remaining motions in its dismissal order, we construe Thompson's argument as challenging the district court's reasons, or lack thereof, for dismissing the motions. We review each of these motions for abuse of discretion.[41]

This court has stated that "[a] § 1983 plaintiff, even if demonstrably indigent, is not entitled to appointed counsel as a matter of right."[42] An indigent plaintiff must first demonstrate that the claims raised meet "a threshold level of plausibility" and then show "exceptional

---

[40] *Farmer*, 511 U.S. at 838.

[41] *Baranowski v. Hart*, 486 F.3d 112, 126 (5th Cir. 2007) (motion to appoint counsel); *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (motion to amend); *Cambridge Toxicology Grp., Inc. v. Exnicios*, 495 F.3d 169, 178 (5th Cir. 2007) (citation omitted) (motion to strike); *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 689 (5th Cir. 2010) (motion to unseal).

[42] *Naranjo v. Thompson*, 809 F.3d 793, 799 (5th Cir. 2015) (citing *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982)).

circumstances."[43] Thompson is correct that district courts should provide "specific findings explaining why counsel was denied."[44] We may find the record sufficiently clear, however, to infer the district court's reasoning.[45] Here, the district court's order first concluded that Thompson failed to state a claim, and that the claim was frivolous. The district court did not abuse its discretion in denying the motion to appoint counsel given the finding that Thompson's claim was not plausible.

Federal Rule of Civil Procedure 15(a) "evinces a bias in favor of granting leave to amend."[46] But a "district court properly exercises its discretion under Rule 15(a)(2) when it denies leave to amend for a substantial reason, such as undue delay, repeated failures to cure deficiencies, undue prejudice, or futility."[47] The district court did not abuse its discretion here, denying the motion to amend because it dismissed Thompson's existing claims as frivolous, the addition of new claims would cause undue delay and prejudice to the existing defendants, and the additional claims arose from conditions at a different prison unit.

Thompson additionally moved to strike the *Martinez* report as misrepresenting his allegations and omitting relevant facts. A "motion to strike should be granted only when the pleading to be stricken has no possible

---

[43] *Id.* (quoting *Ulmer*, 691 F.2d at 212).

[44] *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 262 (5th Cir. 1986).

[45] *Id.*

[46] *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000)).

[47] *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 367 (5th Cir. 2014) (citation omitted).

relation to the controversy."[48] This circuit's precedent authorizing the use of *Martinez* reports supports their relevance to this case. The *Martinez* report also does not displace facts in Thompson's pleadings, and factual disputes are resolved at later litigation stages, rendering the motion to strike misplaced. The district court did not abuse its discretion in denying the motion.

Finally, we evaluate Thompson's claim that the district court abused its discretion in denying his motion to unseal the *Martinez* report as well as the accompanying medical records. In exercising this discretion to seal judicial records, "the court must balance the public's common law right of access against the interests favoring nondisclosure."[49] This court has stated that "[t]he public's right to access . . . is relevant regardless of who opposes keeping a record under seal."[50] And "[t]he district court's discretion to seal the record of judicial proceedings is to be exercised charily."[51] We have previously found abuse of discretion where district courts failed to weigh these competing interests when ruling on a motion to seal.[52] Here, Texas moved to seal Thompson's confidential medical documents filed alongside the *Martinez* report, and the district court granted the motion. Thompson then moved to unseal the documents, waiving his privacy interest "with the competent and specific intent that his confidential information be openly shared with the public." The district court did not "articulate any reasons"

---

[48] *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) (citation omitted).

[49] *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (collecting cases).

[50] *Holy Land Found.*, 624 F.3d at 690.

[51] *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987).

[52] *See Van Waeyenberghe*, 990 F.2d at 848–50; *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022).

to continue to seal Thompson's medical documents after he waived his privacy interest.[53]

\*\*\*\*

We AFFIRM the district court's dismissal with a LIMITED REMAND instructing the district court to address Thompson's motion to unseal his medical records.

---

[53] *Van Waeyenberghe*, 990 F.2d at 849.