# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 9, 2023

Lyle W. Cayce
Clerk

————————

No. 22-40195

————————

Andrew Gonzales,

*Plaintiff—Appellant*,

*versus*

Paul Reilley; Anitra Lindley; Ashley L. Stephenson;
James Geddes; Linda R. Fickey,

*Defendants—Appellees*.

————————————————————————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 9:20-CV-131

————————————————————————

Before Smith, Southwick, and Higginson, *Circuit Judges*.

Per Curiam:[*]

Andrew Gonzales is a prisoner formerly confined in a facility operated by the Texas Department of Criminal Justice.  While imprisoned, Gonzales underwent triple bypass surgery for heart damage.  Gonzales brought suit under 42 U.S.C. § 1983, alleging that various defendants had been deliberately indifferent to his serious medical needs in the months preceding the

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.4.

operation, causing him to suffer permanent heart damage. We AFFIRM the grant of summary judgment with regard to all defendants except Defendant Stephenson. We MODIFY the judgment to dismiss without prejudice the claim against Defendant Stephenson for lack of personal jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events underlying this lawsuit, Andrew Gonzales was incarcerated at the Allan B. Polunsky Unit in east Texas. On June 11, 2018, Gonzales made two visits to the prison medical unit for chest pain that he rated as extremely severe. Gonzales was examined and then released that same day from the medical unit. Gonzales visited the medical unit multiple times over the following months. In February and March 2019, Gonzales filed formal grievances seeking more effective care for his chest and breathing pains. On March 28, 2019, Dr. James Geddes diagnosed Gonzales with cardiac ischemia, leading to a triple vessel coronary artery bypass graft on April 11, 2019. On December 7, 2020, Gonzales was found unconscious in his cell and later suffered cardiac arrest. Gonzales was given an automatic implantable cardioverter defibrillator as a result.

In June 2020, Gonzales filed, *pro se*, this Section 1983 suit in the United States District Court for the Eastern District of Texas. The defendants, employees of the University of Texas Medical Branch, are Paul Reilley, a physician assistant; Anitra Lindley, a senior practice manager; Ashley Stephenson, a grievance investigator; Dr. James Geddes, a physician; and Linda Fickey, a nurse. All defendants except Stephenson moved for summary judgment. The magistrate judge issued a report and recommendation to grant the motion. The district court determined that the defendants were entitled to qualified immunity and granted their motion for summary judgment. Gonzales appealed.

No. 22-40195

## DISCUSSION

### I.    *Qualified Immunity*

We review a grant of summary judgment *de novo*. *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016). To overcome the defendants' assertion of qualified immunity, Gonzales must show they violated his clearly established Eighth Amendment rights. *See Easter v. Powell*, 467 F.3d 459, 462–63 (5th Cir. 2006). Such a showing requires proof that he was harmed by the defendants' deliberate indifference to his serious medical needs. *See Thompson v. Tex. Dep't of Crim. Justice*, 67 F.4th 275, 280–81 (5th Cir. 2023). "Deliberate indifference exists when an official 'knows of and disregards an excessive risk to inmate health or safety.' " *Id.* at 281 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

"Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). Unsuccessful medical treatment, negligence, and medical malpractice do not amount to deliberate indifference; absent exceptional circumstances, a prisoner's disagreement with his medical treatment will not constitute deliberate indifference either. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Whether to provide additional treatment is a decision left to medical judgment. *Id.*

We analyze Gonzales's claims against each defendant.

### a.    *Nurse Fickey*

Gonzales alleges that Nurse Linda Fickey saw him twice on June 11, 2018. Prison medical records, though, indicate she saw him only once that day when he first presented for chest pain. The medical records for Gonzales's second evaluation that day show he was seen by Licensed Vocational Nurse Smith-Valdez, under the direction of Physician Assistant Paul Reilley.

3

As to Nurse Fickey, the medical records establish that she made her entries on Gonzales's records approximately six hours after her evaluation occurred. Gonzales has not offered any evidence to create a dispute about the accuracy of these records. Gonzales underwent an electrocardiogram test ("EKG") and troponin testing, each of which gave no indication of heart problems. Nurse Fickey noted that Gonzales's vital signs were within normal limits, provided him antacids, and released him from the clinic.

These medical records demonstrate that Gonzales was stable when Nurse Fickey evaluated him and that she provided care. There is no evidence that Nurse Fickey acted with deliberate indifference to Gonzales's serious medical needs.

### b.    *Physician Assistant Reilley*

The medical records indicate that Physician Assistant Reilley provided care for Gonzales on three occasions. Physician Assistant Reilley ordered the EKG and troponin testing after Gonzales was examined by Nurse Fickey on June 11, 2018. Gonzales reported difficulty breathing later that same day and was taken on a stretcher to be evaluated by Licensed Vocational Nurse Smith-Valdez. In response to LVN Smith-Valdez's evaluation, Physician Assistant Reilley ordered an injection of ranitidine and solumedrol for acid reduction, which Gonzales received well. At the time this injection was ordered, Gonzales had already undergone EKG and troponin testing. The EKG and troponin testing gave no indication of heart problems. Ordering the injection rather than more intensive care did not amount to deliberate indifference. It was the result of an exercise of medical judgment, to which we afford deference. *See Domino*, 239 F.3d at 756.

Physician Assistant Reilley also saw Gonzales on February 11, 2019. The clinic note stated he was seeing Gonzales as a "follow up for breathing issues for over a year." The note also acknowledged that Dr. Geddes had

previously referred Gonzales for a stress test for potential heart conditions, but Gonzales refused the test. Although Gonzales disputes that he refused the stress test, the clinic note supports a finding that Physician Assistant Reilley was unaware of a substantial risk to Gonzales's health. The test for deliberate indifference is "subjective recklessness as used in the criminal law," requiring a person to disregard a substantial risk of which he is actually aware, not one of which he should have been aware. *Farmer v. Brennan*, 511 U.S. 825, 836–40 (1994). Because Gonzales did not establish Physician Assistant Reilley was aware of a substantial risk to his health, he cannot show Physician Assistant Reilley acted with deliberate indifference.

> c.     *Dr. Geddes*

The medical records demonstrate that Dr. James Geddes saw Gonzales on the following dates and made the following notes:

*July 10, 2018*: Gonzales complained of "deep chest discomfort brought on by exertion or anxiety for three weeks." Gonzales "wants to hold off on stress test referral for right now." Dr. Geddes noted that he would make a referral for a brace for unrelated knee pain.

*November 15, 2018*: Gonzales complained of chest pain, which was relieved by belching. His symptoms were atypical for angina. Gonzales was "not really wanting to go" for a stress test, and "due to [the] somewhat atypical nature of" the symptoms, Dr. Geddes "did not press the issue at this time." Gonzales was asked to avoid heavy exertion and notify the clinic if his symptoms worsened.

*February 21, 2019*: Gonzales was still suffering from the symptoms he reported in the November 2018 visit. Dr. Geddes ordered a stress test, which

No. 22-40195

was scheduled for April. This was a routine, rather than expedited, stress test.[1]

*March 28, 2019*: Dr. Geddes made a provisional diagnosis of cardiac ischemia based on EKG results and expedited Gonzales's stress test. He also restricted Gonzales to the ground floor so he could avoid the use of stairs.

Dr. Geddes analyzed Gonzales's symptoms each time he examined him and provided a plan of care, including two stress tests which Gonzales declined.[2] Dr. Geddes's February 2019 decision to order a routine rather than expedited stress test may have been harmful in retrospect, but does not amount to a constitutional violation. The decision of whether to provide additional care is a decision left to medical judgment. *Gobert*, 463 F.3d at 346. Given our deference to the medical expert on this point, we also defer on the timing of that care. Dr. Geddes expedited the stress test when an EKG returned a result suggesting heart damage.

These records indicate that Dr. Geddes, at worst, may have misunderstood the severity of the risk to Gonzales. Imperfect care or a misdiagnosis does not equate to deliberate indifference. *See, e.g., Gobert*, 463 F.3d at 346 (explaining that unsuccessful medical treatment, acts of negligence, and medical malpractice do not amount to deliberate indifference). Dr. Geddes did not violate Gonzales's Eighth Amendment rights.

---

[1] The record suggests that expedited referrals are carried out within thirty days, while routine referrals may take up to six months.

[2] As mentioned, the clinic notes state that Gonzales declined stress tests. We are not persuaded by Gonzales's contention that for the clinic notes to be valid, Dr. Geddes also needed to provide refusal forms for any instance in which Gonzales declined a stress test.

6

### d.    *Ms. Lindley*

In February and March 2019, Gonzales filed grievance forms in an effort to receive more effective care for his health problems. Anitra Lindley was a senior practice manager at the time and was involved with the receipt and execution of Gonzales's grievances. Gonzales alleges that Lindley committed spoliation, falsification of medical records, and fraud on the court in relation to her handling of his grievance forms. Gonzales acknowledges that his claims against her are "not adequately developed" because of insufficient discovery. Contrary to Gonzales's allegations, Lindley's disclosures indicate that she actively tried to help Gonzales. Lindley opened a new Step 1 emergency grievance so that the unit medical department, and not just the grievance program, could be contacted. Gonzales has not shown Lindley was deliberately indifferent to his serious medical needs.

### e.    *Summary*

Gonzales's allegations at most would support that some defendants unsuccessfully treated him and caused damage to his health. Any failures in their care fall short of the "extremely high standard" of deliberate indifference that would allow Gonzales to overcome the defendants' qualified immunity. *Domino*, 239 F.3d at 756.

### II.    *Discovery*

Gonzales alleges that the defendants' disclosures were incomplete under the existing scheduling order, keeping him from adequately developing his claims against them.

We review decisions on pretrial discovery regarding qualified immunity for an abuse of discretion. *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 481 (5th Cir. 2021). "A trial court enjoys wide discretion in determining the scope and effect of discovery, and it is therefore unusual to find an abuse of

discretion in discovery matters. . . . [T]he district court's decision should be reversed only in unusual and exceptional cases." *JP Morgan Chase Bank, N.A. v. Datatreasury Corp.*, 936 F.3d 251, 255–56 (5th Cir. 2019) (quotation marks and citations omitted).

We have mentioned the multiple disclosures made in this case. Those disclosures contradicted Gonzales's allegations of deliberate indifference. The district court did not abuse its discretion in denying additional discovery.

### III.   *Personal Jurisdiction over Defendant Stephenson*

Ashley Stephenson was not served and was not a party to the defendants' summary judgment motion. In recommending that Stephenson nonetheless benefit from summary judgment, the magistrate judge cited two of this court's opinions, *Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) and *McCarty v. Zapata Cnty.*, 243 F. App'x 792, 794 (5th Cir. 2007). The magistrate judge understood these decisions to mean that "[a]n unserved defendant . . . is entitled to the benefit of the appearing defendants' favorable summary judgment motion." We conclude, though, that only a *defaulting* defendant who has been served is entitled to such a benefit under these precedents. Although Gonzales moved for an entry of default against Stephenson, the district court granted summary judgment and dismissed all outstanding motions without having specifically addressed that motion. At the time the district court granted summary judgment, therefore, Stephenson was an unserved party who had not been held in default by the court.

"[A] fundamental rule of civil procedure [is] that before a federal court may exercise jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Maiz v. Virani*, 311 F.3d 334, 340 (5th Cir. 2002) (quotation marks and citation omitted). It was not satisfied for Stephenson.

No. 22-40195

We MODIFY the judgment to state that Gonzales's claim against Defendant Stephenson is dismissed without prejudice. We otherwise AFFIRM the judgment of the district court with respect to all other defendants.