# United States Court of Appeals
# for the Fifth Circuit

———————

No. 22-30327

———————

United States Court of Appeals
Fifth Circuit

**FILED**

June 24, 2025

Lyle W. Cayce
Clerk

Larce Spikes,

*Plaintiff—Appellee*,

*versus*

Lesley Wheat, *Nurse*; Paula Stringer, *Nurse*; Robin Bowman, *Nurse*; Conrad McVea, III, *also known as* Chip McVea; Janet McVea Williams; Jacob O. McVea,

*Defendants—Appellants*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-8164

———————————————————

Before Jones, Richman, and Ho, *Circuit Judges*.

Per Curiam:

Inmate Larce Spikes injured his right hip at the Rayburn Correctional Center (RCC) in Louisiana. Medical staff treated him for a muscle strain over the following six weeks, but he was eventually diagnosed with a fractured hip. Spikes asserted Eighth Amendment claims under § 1983 against the medical staff. Because they have qualified immunity, we REVERSE the district court's denial of summary judgment.

No. 22-30327

## BACKGROUND

At the relevant time, RCC inmates could request medical care through regular sick calls during limited hours. For cases they believed could not wait, inmates could initiate emergency visits to the infirmary. Because Dr. Casey McVea was the only physician, nurses initially examined inmates, made assessments, and treated patients pursuant to his standing orders. Dr. McVea reviewed their notes, which he used to schedule appointments based on each matter's urgency. For "emergent" conditions like heart attack or stroke, Dr. McVea testified that he would see patients immediately; for "urgent" cases, within two weeks; for routine cases, within six weeks. In the meantime, he could alter treatment plans as each situation developed.

On June 30, 2016, Spikes made an emergency visit to the infirmary in a wheelchair after experiencing hip and groin pain from lifting weights. Spikes alleges he told Nurse Paula Stringer that he could not walk. She did not include this information in her notes and instead documented his vital signs and her assessment that he had a muscle strain. Per standing orders, Stringer gave him ibuprofen and analgesic balm. After review, Dr. McVea signed off on the treatment plan. Stringer saw Spikes during another emergency visit on July 5. She recorded his vitals, documented his wheelchair use, and noted his claims of expanding pain. Spikes claims he dragged himself to the scale; Stringer noted that he reached the scale without assistance. Spikes says he had limited range of motion in his leg; she noted that he had full motion. Stringer maintained the same course of treatment and referred his chart to Dr. McVea. The next day, the doctor reviewed the notes and increased the ibuprofen dose to 400 milligrams three times a day.

On July 6, Spikes made another emergency visit. A non-defendant nurse noted his vitals, use of a wheelchair, inability to walk, and claims of pain radiating from his hip to his knee. She discussed the matter with Dr. McVea,

2

who continued the treatment plan, ordered bottom-bunk assignment, supplied crutches, and scheduled a routine appointment.

On July 14, Nurse Robin Bowman saw Spikes for a routine visit. She recorded his vitals, wheelchair use, possible hip swelling, heightened pain from the exam, and complaints of radiating pain and inability to walk. She continued the treatment plan and ordered a routine appointment with Dr. McVea. Spikes was given wheelchair access, placed on no-duty status for five days, and again assigned to a bottom bunk. Dr. McVea reviewed these notes on July 18. Bowman saw Spikes again during a July 19 routine visit. She took similar notes and extended the treatment, wheelchair access, bottom bunk assignment, and no-duty status. Dr. McVea reviewed the notes on July 20 and marked that an appointment was scheduled.

On July 20, Spikes made another emergency visit and was seen by Nurse Lesley Wheat. She noted his repeat visits, gave him crutches, and recommended he refrain from sports and weightlifting. After review, Dr. McVea returned Spikes to regular duty assignment with permission to use crutches. Wheat reported Spikes for making an emergency visit for a previously treated injury. He was found guilty of malingering and deprived of yard time for four weeks.

On August 11, Spikes had his appointment with Dr. McVea. Dr. McVea performed a physical exam and found no swelling. Dr. McVea continued Spikes's bottom bunk assignment, changed his duty status to require no heavy lifting, ordered lab work to evaluate muscle damage, and ordered an X-ray. The X-ray revealed a hip fracture, and Spikes was admitted to a hospital that day. Surgery took place on August 15, 2016. Spikes alleges that the bones in his hip began healing incorrectly because of the delay, requiring the surgeon to refracture his hip.

Spikes brought § 1983 claims against Dr. McVea and Nurses Stringer, Bowman, and Wheat. *Inter alia*, he alleged that each defendant violated the Eighth Amendment by being deliberately indifferent to his medical needs before and after surgery. The defendants asserted qualified immunity and moved to dismiss, but the district court denied their motion. After discovery, the defendants again asserted qualified immunity and moved for summary judgment. The district court denied their motion as to the above-described, preoperative events, but granted it as to postoperative events. The defendants filed an interlocutory appeal. Initially, we affirmed. *Spikes v. McVea (Spikes I)*, 8 F.4th 428, 436, 440 (5th Cir. 2021). After that decision, Dr. McVea died. We treated a petition for rehearing en banc as one for panel rehearing and explained that "the recent death of the doctor makes it all the more important that the inquiry of qualified immunity not rest on the collective action of the medical staff, but on the role of each participant." *Spikes v. McVea (Spikes II)*, 12 F.4th 833 (5th Cir. 2021) (per curiam), *reh'g denied*, 2021 WL 4978586 (5th Cir. Oct. 13, 2021). We vacated the district court's judgment and remanded for individualized analyses. On remand, the district court held that genuine issues of material fact precluded summary judgment to each defendant. Nurses Stringer, Bowman, and Wheat, and Dr. McVea's heirs timely appealed.

## STANDARD OF REVIEW

We may review a denial of summary judgment based on qualified immunity "to the extent it turns on an issue of law." *Mitchell v. Forsyth*, 472 U.S. 511, 528–30, 105 S. Ct. 2806, 2816–2818 (1985). Where that denial was because of genuine issues of material fact, "we do not have jurisdiction to review the genuineness of any factual disputes but can decide whether the factual disputes were material." *Kovacic v. Villarreal*, 628 F.3d 209, 211 n.1 (5th Cir. 2010). We "consider only whether the district court correctly assessed 'the legal significance' of the facts it 'deemed sufficiently supported

for purposes of summary judgment.'" *Joseph ex rel. Est. of Joseph v. Bartlett*, 981 F.3d 319, 331 (5th Cir. 2020) (quoting *Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc)).  In so doing, "we must view the facts and draw reasonable inferences in the light most favorable to the plaintiff and ask whether the defendant would be entitled to qualified immunity on those facts." *Cole*, 935 F.3d at 452.  As to that question, our review is *de novo. Id.*

## DISCUSSION

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080 (2011) (quotation marks and citation omitted).  Courts may address this two-step inquiry in any order, and defendants are entitled to qualified immunity if the plaintiff fails at either step. *Pearson v. Callahan*, 555 U.S. 223, 242, 129 S. Ct. 808, 821 (2009).[1]

### I.

The Eighth Amendment requires the government "to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976).  "A prison official's

---

[1] Spikes argues that *Spikes I*'s holding that he showed violations of his clearly established rights is the law of the case because *Spikes II* never explicitly stated that *Spikes I* was vacated.  But *Spikes II* necessarily abrogated *Spikes I* when it vacated the district court's denial of qualified immunity at summary judgment—which *Spikes I* affirmed—and remanded for an individualized qualified immunity analysis.  Finally, as only *Spikes II* was included in the judgment, *Spikes II* alone formed the mandate of the first appeal of this case.  Fed. R. App. P. 41(a).  An opinion cannot be law of the case absent an appellate court mandate.  *See, e.g., Key Enters. of Del., Inc. v. Venice Hosp.*, 9 F.3d 893, 898 (11th Cir. 1993) (en banc) ("[B]ecause the panel's mandate had not issued, the panel's decision was never the 'law of the case.'"); *Nat. Res. Def. Council, Inc. v. Cnty. of Los Angeles*, 725 F.3d 1194, 1203 (9th Cir. 2013) (same); *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) (same).

deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 1974 (1994). Deliberate indifference is akin to "subjective recklessness." *Id.* at 839, 114 S. Ct. at 1980. It is a "stringent" and "extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A plaintiff "must show that the defendant: (1) was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; (2) subjectively drew the inference that the risk existed; and (3) disregarded the risk." *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019) (quotation marks, citation, and alterations omitted).

"Mere negligence, neglect or medical malpractice is insufficient," *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979), as is "an incorrect diagnosis." *Domino*, 239 F.3d at 756. If "medical treatment was provided, even if it was negligent, disagreed-with, and based on a perfunctory and inadequate evaluation," there is no violation. *Petzold v. Rostollan*, 946 F.3d 242, 250 (5th Cir. 2019). We instead require a plaintiff to show that personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Spikes failed to show that here.

Highly instructive here is *Estelle v. Gamble*, where an inmate sought treatment 17 times in three months with complaints of back pain after a bale of cotton fell on him. 429 U.S. at 99, 107, 97 S. Ct. at 288, 292. Doctors diagnosed him with a back strain and ordered "bed rest, muscle relaxants and pain relievers," adjusted medications over time, permitted him to remain in his cell except for meals and showers, and assigned him to a lower bunk. *Id.* at 99, 107, 97 S. Ct. at 288, 292. Gamble was reassigned to light work despite his unmitigated pain. *Id.* at 100, 97 S. Ct. at 289. When he refused, doctors performed more tests and continued trying various pain medications. *Id.*

When Gamble still refused, he was disciplined with solitary confinement. *Id.* at 101, 97 S. Ct. at 289. Gamble claimed an Eighth Amendment violation because, *inter alia*, an X-ray should have been ordered. *Id.* at 107, 97 S. Ct. at 292–93. The Court rejected this theory because that was a "medical decision" that did "not represent cruel and unusual punishment." *Id.*

## A.

With respect to Nurse Stringer, who saw Spikes on his first and second visits on June 30 and July 5, the district court found genuine fact disputes as to (1) whether Stringer checked for a hernia, (2) whether she could have expedited Spikes's appointment with Dr. McVea, (3) whether Spikes had full motion in his right leg, and (4) whether he could walk. None of these are material because, construing them in Spikes's favor, he cannot show deliberate indifference. At bottom, Stringer misdiagnosed his fracture as a muscle strain. This "incorrect diagnosis" is insufficient to show deliberate indifference, *see Domino*, 239 F.3d at 756, since some "medical treatment was provided, even if it was negligent" or "based on a perfunctory and inadequate evaluation." *Petzold*, 946 F.3d at 250 (5th Cir. 2019). Failing to check for a hernia was not reckless. Failing to expedite the appointment was not deliberately indifferent because she treated Spikes pursuant to standing orders and her second report resulted in an increased ibuprofen dose.

Assuming he could not ambulate, there was no trauma that made a fracture the obvious diagnosis, nor did his symptoms alone make it obvious. After all, both visits to Stringer occurred within a week of Spikes's injury, and Dr. McVea testified that it can be expected that pain can persist for two weeks after a muscle strain. *See Williams v. City of Yazoo*, 41 F.4th 416, 425 (5th Cir. 2022) (discussing "symptoms-only scenarios"). This is a far cry from cases where medical personnel knowingly failed to treat an inmate's chronic illness, *see Ford v. Anderson Cnty.*, 102 F.4th 292, 302, 308 (5th Cir.

2024), or where personnel ignored an inmate's immediate complaints of pain after a surgery, *see Harris v. Hegmann*, 198 F.3d 153, 159–160 (5th Cir. 1999), or where the appropriate response to a known serious risk of harm were obvious, *see Austin v. Johnson*, 328 F.3d 204, 210 (5th Cir. 2003) (ambulance called "almost two hours" after a minor vomited, collapsed, and fell unconscious while performing strenuous exercise).

Spikes finally argues that Stringer was deliberately indifferent by documenting that he could ambulate when he allegedly could not, which delayed proper treatment. On this point, he fails to establish causation. When Spikes visited the infirmary on July 6—one day after his second examination by Nurse Stringer—his inability to ambulate was accurately reported to Dr. McVea. But because that did not alter the diagnosis or expedite his appointment, he cannot show that Nurse Stringer's alleged misreporting "resulted in substantial harm." *See Petzold*, 946 F.3d at 249.

B.

Much of the same analysis applies to Nurse Bowman's examinations on July 14 and July 19. Spikes does not allege any misrepresentation of his symptoms. Instead, the only genuine fact dispute is whether Bowman could have expedited Spikes's appointment with Dr. McVea. But even if she could, she was not deliberately indifferent. Although Bowman was aware that Spikes was using a wheelchair for over two weeks post-injury, her actions were only a continued misdiagnosis of his fracture as a muscle strain. Nurse Bowman took notes about the visits, maintained his ibuprofen and balm treatment, and ensured bottom-bunk assignment, wheelchair access, no work duties, and a scheduled appointment. This is not deliberate indifference because, absent intervening "dramatic[] increase[s] in severity," "an official defers to prior treatment—and doesn't delay it—when he knows an injured prisoner has recently received medical care and denies the prisoner's

additional treatment request for the same injury." *See Petzold*, 946 F.3d at 251 & n.42 (citing *Gobert v. Caldwell*, 463 F.3d 339, 350–51 (5th Cir. 2006)).

## C.

The same analysis largely applies to Nurse Wheat. The only fact issue is whether she could expedite Spikes's appointment. Again, that is immaterial because the root issue was a misdiagnosis. Wheat continued the same treatment plan that Bowman followed and provided crutches and advised him to refrain from sports and weightlifting. No dramatically changed circumstances made it reckless for Wheat to defer to earlier treatment. Like in *Gamble*, mere passage of time is insufficient to make a changed diagnosis obviously necessary. 429 U.S. at 99, 97 S. Ct. at 288. Also, like in *Gamble*, Nurse Wheat's referring Spikes for discipline was not an Eighth Amendment violation. *Id.* at 101, 97 S. Ct. at 289. That remains the case even if the discipline frustrated his attempts to expedite his treatment, as he continued to have access to his medications. *See Thompson v. Tex. Dep't of Crim. Just.*, 67 F.4th 275, 278 (5th Cir. 2023); *McGlinchey v. United States*, 996 F.2d 306 (5th Cir. 1993).

## D.

Finally, with respect to Dr. McVea, the district court found genuine disputes as to (1) whether the doctor knew Spikes's level of pain, inability to walk, and lack of full motion in his right leg, and (2) whether Dr. McVea could have expedited Spikes's appointment. These disputes are immaterial because "[t]here is a vast difference between an earnest, albeit unsuccessful attempt to care for a prisoner and a cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help." *Fielder*, 590 F.2d at 108. Even assuming that Dr. McVea knew of Spikes's inability to ambulate and could have expedited the appointment, he was not deliberately indifferent because he continued to treat Spikes from the time of the injury until the eventual appointment. As Spikes made successive

trips to the infirmary, Dr. McVea increased the dose of ibuprofen, limited his work duties, assigned him to a bottom bunk, provided him with crutches and a wheelchair, and ensured he had an appointment.  While he eventually re-assigned Spikes to limited work duties, that does not change that he attempted to treat what he believed was a muscle sprain.

Spikes counters that Dr. McVea must have subjectively known that the injury was not a muscle sprain.  The only fact supporting that inference is his knowledge that Spikes's pain was severe and persistent such that he could not walk.  But that is an issue of misdiagnosis, and Dr. McVea had numerous reasons not to suspect fracture:  He considered Spikes's normal vital signs as suggestive of less-than-severe pain and his lack of trauma as indicative of a less serious injury.  Even if there was "a significant risk that [Dr. McVea] should have perceived but did not," that "cannot under our cases be condemned."  *Farmer*, 511 U.S. at 838, 114 S. Ct. at 1979; *see also Stewart v. Murphy*, 174 F.3d 530, 534–36 (5th Cir. 1999).  Dr. McVea never "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Johnson*, 759 F.2d at 1238.  Like in *Gamble*, the failure to order an X-ray earlier was but a matter of mistaken medical judgment that cannot support a finding of deliberate indifference.  429 U.S. at 107, 97 S. Ct. at 292–93.

Because none of the defendants was deliberately indifferent, we REVERSE.