# United States Court of Appeals
# for the Fifth Circuit

———————————

No. 24-10014

———————————

United States Court of Appeals
Fifth Circuit

**FILED**
November 6, 2024

Lyle W. Cayce
Clerk

Benjamin Hulsey,

*Plaintiff—Appellant*,

*versus*

Ricky Bishop, *Sheriff, Taylor County Sheriff's Office*; Andre Moore, *Lieutenant, Taylor County Detention Center*; Tim Trawick, *Chief, Taylor County Detention Center*; N. Wade, *Officer, Taylor County Detention Center*; George Woodward, *Doctor, Taylor County Jail*; Shannon Boyd, *Nurse Practitioner, Taylor County Jail*; Jeff Cowan, *Detective, Abilene Police Department*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 1:23-CV-69

———————————————————————

Before Clement, Oldham, and Wilson, *Circuit Judges*.

Per Curiam:[*]

Plaintiff-Appellant Benjamin Hulsey brought this action pro se, asserting constitutional violations arising from his assault while a pretrial

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-10014

detainee at the Taylor County Detention Center. Hulsey's claims were subject to preliminary screening and dismissed sua sponte for failure to state a claim. On appeal, Hulsey argues that officials failed to protect him despite knowing that his role as an informant made him vulnerable to attack by other inmates. Because we find that Hulsey adequately alleged deliberate indifference to a substantial risk of harm, we VACATE the dismissal of Hulsey's failure-to-protect claim against Andre Moore, and REMAND for further proceedings consistent with this opinion. We AFFIRM the dismissal of Hulsey's remaining claims.

## I.

## A.

This case arises from a dismissal for failure to state a claim, so we take the following well-pleaded facts as true.[1] *See Benfield v. Magee*, 945 F.3d 333, 336 (5th Cir. 2019).

On November 7, 2022, while Benjamin Hulsey was a pretrial detainee at Taylor County Detention Center, members of a prison gang placed a "hit" on him over a recorded call made from the jail, offering $400 to anybody who murdered him. Jail officials became aware of the threat and responded by placing Hulsey in protective custody. Hulsey specifies that defendants Jeff Cowan, Ricky Bishop, Tim Trawick, and Andre Moore were aware of the threat. Hulsey was initially not worried about the threat and asked to be moved "back to population." But after moving to general population, he

---

[1] The pleadings consist of Hulsey's complaint and a questionnaire used to further develop the factual basis for his claims. *See Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) ("Because the answers to the questionnaire will effectively amplify the original allegations in the prisoner's complaint, they are an integral part of that complaint and not a separate, independent pleading." (citation omitted)).

grew concerned and requested to return to protective custody. Officials granted that request.

On November 30, 2022, while still in protective custody, Hulsey was recruited by detectives from the Abilene Police Department (APD) to record another inmate (the suspect inmate) confessing to murder. The suspect inmate was a known member of the Aryan Brotherhood, a different prison gang than the one that placed the hit on Hulsey. Hulsey was instructed to communicate only with Moore, a lieutenant at the detention center, and Trawick, a chief there, about the arrangement. Hulsey told Moore he would prefer if other officers were aware, but Moore responded that he did not trust most of the officers because many had gone to school with the inmates and had leaked similar information in the past. Hulsey later added that "Sheriff Bishop had knowledge of the operation from day one," and that Cowan, an APD detective, was "in charge of this mission" and at least partly responsible for ensuring Hulsey's safety.

At this time, Hulsey's lawyer was attempting to "get something in writing from the DA," and Hulsey was supposed to "wait on recording anything until after he did." But on December 2, 2022, before an agreement was reduced to writing, Hulsey was "moved into the tank" with the suspect inmate, who confessed to the murder almost instantly.

The next day, the tank was "shaken down" by jail officials who discovered the recording device. The officials "called out and questioned" Hulsey but ultimately asked him to carry the device back to the tank. Hulsey refused because he was scared now that "several officers" had become aware of the arrangement, which he was supposed to discuss only with Moore and Trawick. Moore asked Hulsey to continue, but Hulsey explained that he did not feel safe because everybody was acting suspicious, and another member of the Aryan Brotherhood had moved into the tank. Ultimately, Hulsey

agreed to continue after Moore promised that "an officer would be aware of the situation and [his] tank would be under 24/7 [surveillance]." Hulsey further alleged that Moore promised an officer would be "posted at [his] tank [at] all times."

Over the next few days, Moore became aggressive with Hulsey and tried to rush him. Hulsey messaged Moore via the jail's kiosk system on December 3, 4, and 7 informing him that he was having problems. On December 4, Hulsey messaged Moore using a "secret code" to indicate he needed to talk. In Moore's office, Hulsey expressed his fears and tried to abandon the plan, but Moore pressured Hulsey to continue. Hulsey contends that Moore disregarded Hulsey's safety and broke his word by (1) moving two new inmates into Hulsey's tank, one of whom was the other member of the Aryan Brotherhood; (2) not making the "pod" or "picket[]" officer aware of his situation; (3) not moving Hulsey or the other inmates after Moore became aware of problems; and (4) pressuring Hulsey to continue.

On December 9, 2022, the other member of the Aryan Brotherhood who had moved into Hulsey's tank assaulted him. At the time of the assault, the officer who should have been posted at Hulsey's tank, defendant N. Wade, was absent. Hulsey first alleged that Wade "left his post for the purpose of allowing" the assault, but later expressed doubt that Wade was in on the plan. Hulsey asserts that Bishop, Trawick, and Moore had him assaulted. He explains that officials told the assailant that Hulsey was an informant and agreed to "let him out of jail if he would assault [Hulsey]," but later admitted uncertainty over whether the assailant was promised release because Hulsey was not present for any conversation between the officials and the assailant. Hulsey recounts that the assault lasted "for a very long time" and that he did everything he could to attract the attention of the officers but did not realize Wade had left his post. In response to the questionnaire noting that jail records reflect the fight started over the

television remote, Hulsey explained that the fight started when his assailant told him that "snitches" do not get to decide what to watch and proceeded to go to his bunk for a weapon.

The assault left Hulsey with a broken nose and a concussion that continues to cause severe headaches, ringing in his ears, dizziness, confusion, and depression. Hulsey adds that he has suffered three seizures, memory loss, uncontrollable shaking, a speech impediment, problems thinking, severe nightmares, anxiety, and fear of others. Spells of dizziness have caused Hulsey to fall several times, splitting his head open on one occasion and injuring his left wrist on another.

Hulsey alleges he has suffered various forms of hardship and retaliation since the assault. First, as part of some arrangement with jail officials, Hulsey was forced to hide in the shower on the day of the assault. Next, Hulsey insisted that charges be filed against his assailant, but officials—specifically, Bishop and Trawick, both of whom he informed of the assault—have refused.

Hulsey also contends that officials have retaliated against him by interfering with his access to mental-health services and intercepting messages that Hulsey intended to send to mental-health professionals. After reading these messages, officials mocked Hulsey for being sexually molested as a child. They also made it more difficult for Hulsey to access books. And they have not allowed Hulsey to shave for four months. Additionally, Hulsey complains that prolonged segregation is affecting his mental health. He explains that the facility has two different types of segregation, one for inmates "in trouble" and one presumably for inmates in need of protection. He has been placed in the former, which does not have a television.

Hulsey contends that in retaliation for filing this suit, officials have threatened to move him out of protective custody and into the general

population where he will be physically harmed. And they have refused to share copies of grievances.

Finally, according to Hulsey, officials have refused to get him the medical treatment he needs to stop his headaches. Specifically, he alleges that George Woodward, a doctor, and Shannon Boyd, a nurse practitioner, refused to treat his brain injuries sustained in the assault. Hulsey notes that Boyd diagnosed him with a broken nose and concussion, prescribed Naproxen for pain, and scheduled an eye appointment, but she has refused to allow Hulsey to see a brain specialist and has since stopped prescribing Naproxen. Hulsey further alleges that Naproxen is insufficient to treat his injuries, his symptoms are serious, and he has requested to see a brain specialist.

**B.**

On April 3, 2023, Hulsey, proceeding pro se, brought constitutional claims against employees of Taylor County Detention Center, Taylor County Sheriff's Office, and APD. He asserted claims arising from his assault based on failure to protect, failure to train, reckless indifference, and inadequate medical care under the Eighth and Fourteenth Amendments. The district court granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. As a pretrial detainee bringing a civil suit against a governmental entity, Hulsey's complaint was subject to screening under both 28 U.S.C. §§ 1915 and 1915A. Accordingly, the district court withheld service of process on defendants.

After initial review, the district court obtained Hulsey's consent and transferred the case to a magistrate judge. The magistrate judge was to conduct a *Spears* hearing or, if not feasible, utilize a questionnaire to develop the factual basis of Hulsey's complaint. *See Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985) (hearing), *overruled on other grounds by Neitzke v.*

No. 24-10014

*Williams*, 490 U.S. 319, 324 (1989); *Watson v. Ault*, 525 F.2d 886, 892 (5th Cir. 1976) (questionnaire).

The magistrate judge ordered the Taylor County Detention Center to provide authenticated and verified copies of all records pertaining to Hulsey's complaint, including any relevant videos. The order explains that the records, known as a *Martinez* report, will be "maintained in chambers and reviewed solely for screening purposes" unless Hulsey appeals a dismissal of his claims, in which case the materials will be made a sealed part of the record. *Thompson v. Tex. Dep't of Crim. Just.*, 67 F.4th 275, 280 (5th Cir. 2023) ("A *Martinez* report is produced as a result of prison officials' investigating the prisoner's complaints and compiling an administrative record that acts like an affidavit to aid the district court in screening the complaint." (internal quotations omitted)); *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978). The Taylor County Sheriff's Office provided the records in two batches, explaining that they "did not provide any of the kiosk documents in the first initial request due to no mention of the kiosk." The magistrate judge noted that the district court "has still not received the entirety of relevant records because those that have been received reference photographs and videos that have yet to be provided." The magistrate judge also ordered Hulsey to complete a questionnaire to assist in evaluating the complaint, and set a *Spears* hearing to provide the court an opportunity to ask Hulsey questions about his allegations. The district court received a letter from Hulsey a few days after the hearing explaining that he attempted to attend the hearing, but officials failed to transport him there.

The magistrate judge interpreted Hulsey's complaint as asserting claims under 42 U.S.C. § 1983 against Bishop, Trawick, and Moore for failure to protect, failure to train, conspiracy, and retaliation; against Woodward and Boyd for deliberate indifference to serious medical needs;

7

and against Cowan for failure to protect.[2] The magistrate judge dismissed these claims under 28 U.S.C. §§ 1915 and 1915A for failure to state a claim upon which relief may be granted.

The magistrate judge also construed Hulsey's filings as seeking injunctive relief to enable him to access medical and mental health treatment, stop the acts of retaliation against him, and alleviate the effects of solitary confinement. Finding that Hulsey was unable to show a substantial likelihood of success on the merits for the same reasons his claims were dismissed, the magistrate judge denied injunctive relief. Finally, the magistrate judge granted Hulsey's application to proceed *in forma pauperis* on appeal, and this appeal followed.

## II.

## A.

The Prison Litigation Reform Act requires a district court to dismiss a prisoner's civil rights complaint at any time if the court determines that the action is frivolous or fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A. This court reviews dismissals under §§ 1915(e)(2)(B)(ii) and 1915A for failure to state a claim using the same de novo standard applied to dismissals under Federal Rule of Civil Procedure 12(b)(6). *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016). All well-pleaded facts are accepted as true and viewed in the light most favorable to the plaintiff. *Whitley v. Hanna*, 726 F.3d 631, 637 (5th Cir. 2013). Dismissal

---

[2] The magistrate judge also acknowledged that Hulsey initially alleged Wade conspired to have him assaulted and abandoned his post to allow the assault to occur, but construed Hulsey's response on the questionnaire, that he would "like to delay [his] judgment" of Wade, as an abandonment of any claims against Wade. Alternatively, the magistrate judge determined that the claim against Wade would fail for lack of factual support and dismissed on both grounds.

is appropriate where a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, this court will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal quotation marks omitted) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)). Finally, "we liberally construe a pro se complaint and hold it to less stringent standards than formal pleadings drafted by lawyers." *Mendoza-Tarango v. Flores*, 982 F.3d 395, 399 (5th Cir. 2020) (internal quotations and alterations omitted).

**B.**

On appeal, Hulsey primarily argues that the magistrate judge erred in dismissing his failure-to-protect claim. While his arguments mainly revolve around Moore, Hulsey sometimes refers to "the defendants." Hulsey also asserts, without further explanation, that the magistrate judge erred in not allowing him to amend his case after the final judgment, and in not having him present at the *Spears* hearing.

While pro se briefs are afforded liberal construction, pro se litigants are still required to brief arguments to preserve them; issues not adequately briefed are abandoned. *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993). We first address the focus of Hulsey's brief, namely, (i) the failure-to-protect claim against Moore. Continuing to construe Hulsey's brief liberally, we next consider (ii) the failure-to-protect claim against other defendants and (iii) the denial of leave to amend and lack of a *Spears* hearing. All remaining claims are forfeited.

No. 24-10014

**1.**

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (citing *Cupit v. Jones*, 835 F.2d 82, 84–85 (5th Cir. 1987)). This court has held that claims brought by pretrial detainees based on episodic acts or omissions rather than conditions of confinement are subject to the same subjective standard of deliberate indifference articulated by the Supreme Court to evaluate whether acts by prison officials violate the Eighth Amendment in *Farmer v. Brennan*, 511 U.S. 825, 837–40 (1994). *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996) (en banc).[3]

In *Farmer*, the Supreme Court explained that prison officials have a duty to protect prisoners from violence at the hands of other prisoners. 511 U.S. at 833. But not "every injury suffered by one prisoner at the hands of another" amounts to a constitutional violation. *Id.* at 834. Prison officials can be held liable for their failure to protect an inmate only when they are deliberately indifferent to a substantial risk of serious harm. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). "Deliberate indifference is an 'extremely high' standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quoting *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006)). To establish deliberate indifference, a plaintiff must show that the official both (1) "knows that inmates face a substantial risk of serious harm" and (2) "disregards that

---

[3] *See also Alderson*, 848 F.3d at 419 & n.4 (citing *Estate of Henson v. Wichita County*, 795 F.3d 456 (5th Cir. 2015); *Hyatt v. Thomas*, 843 F.3d 172 (5th Cir. 2016); *Zimmerman v. Cutler*, 657 F. App'x 340 (5th Cir. 2016)) (explaining that even if the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) calls into question whether a subjective standard applies to failure-to-protect claims brought by pretrial detainees under the Fourteenth Amendment, the Fifth Circuit has continued to rely on *Hare* post-*Kingsley*, and the panel is bound by our rule of orderliness).

risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The first element of deliberate indifference, awareness, requires subjective knowledge of the risk. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. But to prove that an official is subjectively aware of a substantial risk of serious harm, plaintiffs do not need to produce direct evidence of the official's knowledge. *Adames*, 331 F.3d at 512. Rather, the requisite knowledge can be inferred from circumstantial evidence. *Farmer*, 511 U.S. at 842. For example, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* And plaintiffs do not need to show that the defendant was aware of the specific source of the harm suffered. *Id.* at 843 (noting that a defendant cannot escape liability because "he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault").

The second element, disregard of the risk, means that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. The Supreme Court has explained that plaintiffs "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "[D]eliberate indifference 'is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Converse v. City of Kemah*, 961 F.3d 771, 777 (5th Cir. 2020) (quoting *Farmer*, 511 U.S. at 835).

No. 24-10014

In sum, Hulsey's failure-to-protect claim against Moore requires facts sufficient to show: (1) a substantial risk of serious harm to Hulsey, (2) Moore's deliberate indifference to that risk, and (3) causation. *See White v. Fox*, 470 F. App'x 214, 220 (5th Cir. 2012) (per curiam). It is well settled that an inmate who acts as an informant as to other inmates faces a substantial risk of serious harm. *See, e.g.*, *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981) (recognizing constitutional violation in failing to reasonably protect against apparent danger that arises "when an inmate cooperates with an official prison investigation"); *Adames*, 331 F.3d at 514 (noting that "an individual who divulges secret information about his gang might be a target of violence by fellow gang members"); *Westmoreland v. Butler County*, 29 F.4th 721, 729 (6th Cir. 2022) ("[B]eing identified as a 'snitch' in prison puts an inmate at substantial risk of assault."); *Dale v. Poston*, 548 F.3d 563, 570 (7th Cir. 2008) ("[I]t's common knowledge that snitches face unique risks in prison."). Therefore, Hulsey's allegation that he was attacked because he was not adequately protected after serving as an informant sufficiently shows a substantial risk of serious harm, as well as causation.[4] At issue is whether he has plausibly alleged the two elements of deliberate indifference: (1) awareness of the substantial risk and (2) disregard for that risk.

---

[4] As to causation, "a plaintiff must prove that the defendant's deliberate indifference caused the plaintiff's injury." *Williams v. Hampton*, 797 F.3d 276, 296 (5th Cir. 2015) (en banc) (Elrod, J., concurring). As discussed *infra*, Hulsey alleges that Moore was deliberately indifferent in (1) pressuring Hulsey to continue serving as an informant, (2) failing to provide constant surveillance of Hulsey's tank, and (3) permitting the assailant to be housed near him. Hulsey further alleges he was injured when the assailant attacked him for being an informant while the two were left unsupervised. This is sufficient to plausibly show the "'necessary casual link' between the officer's failure to act reasonably and the plaintiff's injury," at least as to Moore. *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (quoting *Rodriguez v. Sec'y for Dep't of Corrs.*, 508 F.3d 611, 622–23 (11th Cir. 2007)).

No. 24-10014

**a.**

We begin by considering whether Hulsey pleaded facts sufficient to plausibly allege that Moore was aware of a substantial risk of serious harm to Hulsey. Hulsey pleaded the following relevant facts: Moore was one of the few officials aware of Hulsey's arrangement with APD to record the suspect inmate; Moore told Hulsey that other officers could not be trusted with knowledge of the arrangement because they would leak the information to other inmates; several officers learned of the arrangement after discovering Hulsey with the recording device in his tank; Hulsey then told Moore he did not feel safe continuing to record because everyone was acting suspicious and because another member of the Aryan Brotherhood had moved into Hulsey's tank; Moore persuaded Hulsey to continue recording by promising protection, including 24/7 surveillance of his tank; Hulsey met with Moore in his office and expressed his fears on December 4; and Hulsey repeatedly messaged Moore using the jail's kiosk system informing him of problems in the days leading up to the assault.

Without explicitly deciding the issue, the magistrate judge expressed doubt that Hulsey sufficiently alleged Moore's awareness of the risk. The judge reasoned that it was unclear whether Moore received the messages Hulsey sent concerning his safety, because "[c]ommon sense suggests that the officers monitoring the kiosk system in a jail the size of TCDC do not blindly obey inmates' requests to forward messages to their superiors." In so reasoning, the magistrate judge improperly relied on the authenticated records from the *Martinez* report. To start, these authenticated records serve only to "sort and clarify issues raised in a pro se complaint." *Thompson*, 67 F.4th at 280 (internal quotations omitted) (quoting *Davis v. Lumpkin*, 35 F.4th 958, 964 (5th Cir. 2022)). When the authenticated records conflict with the pro se plaintiff's allegations, the district court must accept the plaintiff's allegations as true. *Id.* Here, the records—showing that Hulsey asked for

13

messages to be forwarded to Moore—conflict with Hulsey's complaint, which states that he "informed" Moore via the kiosk that he was having problems and also that he "sent him messages." In any case, the records also show that on at least one occasion an official responded that "[t]his information has been forwarded to Lt. Moore." Therefore, we must make the reasonable inference that Moore received these messages.

The magistrate judge also concluded that Hulsey's "factual allegations do not support that other inmates actually knew he carried a recording device into the tank or was an informant." The magistrate judge reasoned that it is implausible that other officers told inmates of Hulsey's cooperation with APD and solicited Hulsey's assault in exchange for the other inmates' freedom. This reasoning fails to properly credit Hulsey's claim that Moore himself expressed fear that officers would leak the confession plan, and it ignores that inmates may have personally observed the discovery of the recording device. Moreover, while the magistrate judge correctly noted that the "snitches" comment made by Hulsey's assailant comes too late to show officials' awareness of the risk, the comment certainly suggests it is not implausible that other inmates were aware of Hulsey's role as an informant and that officials may have known as much. In fact, Hulsey's mere placement in protective custody could have indicated to other inmates that he was an informant. *See Poston*, 548 F.3d at 570 ("[P]risoners 'assume [inmates in protective custody] are snitches.'" (alteration in original) (quoting James E. Robertson, *A Clean Heart and An Empty Head: The Supreme Court and Sexual Terrorism in Prison*, 81 N.C. L. Rev. 433, 459 (2003))).

Taking Hulsey's well-pleaded facts as true, he sufficiently alleges that Moore was aware that Hulsey faced a substantial risk of harm. A plaintiff may show that an official was aware of facts from which it can be inferred that a substantial risk of harm existed by showing that the official was both (1) aware

the plaintiff served as an informant and (2) aware of facts from which it can be inferred that other inmates knew the plaintiff had served as an informant. *See Adames*, 331 F.3d at 514 (explaining that to show official "was aware of facts from which he could infer a substantial risk of serious harm," plaintiff had to show both that he had leaked information about a gang and that gang members learned he had leaked information). Here, Moore knew that Hulsey was acting as an informant. And Moore at least knew facts from which he could infer that other inmates were aware of Hulsey's role as an informant— namely, other officers discovered Hulsey's recording device in a "shake-down," and Moore knew officers had leaked similar information to inmates in the past.[5] From this, Moore could infer either that inmates had also observed the shake-down and seen the recording device, or that, consistent with Moore's earlier warning to Hulsey, officers leaked the information to inmates. Additionally, Hulsey's messages and verbal warnings further alerted Moore to the danger.

Hulsey also sufficiently alleges that Moore did in fact draw the inference that Hulsey faced a substantial risk of serious harm. As Hulsey argues, the risk he faced after inmates discovered he recorded a fellow inmate is sufficiently obvious to infer that Moore had subjective knowledge of same. *See Farmer*, 511 U.S. at 842 (holding that subjective awareness may be inferred where risk is obvious); *see also, e.g.*, *Adames*, 331 F.3d at 514 (suggesting that risk to informant-inmates is sufficiently obvious). The fact that Moore promised Hulsey protection and warned him against sharing his

---

[5] While Hulsey's complaint does not explicitly state that Hulsey informed Moore that other officers discovered the recording device during the shake-down, it is easily inferred (especially under the liberal construction afforded to pro se complaints) from the conversations between Hulsey and Moore immediately following the discovery. It was because of the discovery of the recording device that Hulsey did not want to continue, and he told Moore that he did not feel safe because "of how everything occurred."

involvement as an informant with other officers further suggests that Moore did in fact infer that Hulsey faced a substantial risk.

**b.**

Having concluded Hulsey sufficiently alleged Moore's awareness of a substantial risk of serious harm, we turn to whether Hulsey sufficiently alleged Moore's disregard of that risk. The relevant facts Hulsey pleaded are as follows: Moore pressured Hulsey to continue recording the suspect inmate; Moore was responsible for moving two new inmates into Hulsey's tank—including Hulsey's assailant, a member of the same gang as the suspect inmate; Moore did not move either Hulsey or his assailant after Hulsey alerted Moore to problems; Moore promised Hulsey that "an officer would be aware of the situation and [his] tank would be under 24/7 surveillance"; the officer assigned to Hulsey's tank was absent from his post when Hulsey was assaulted; and Hulsey's assailant called him a snitch.[6] Taken together, Hulsey's allegations and arguments on appeal indicate that Moore disregarded the risk to Hulsey by (1) pressuring him to continue to record, (2) failing to provide constant surveillance of his tank as promised, and (3) permitting the assailant to be in his tank.

Whether this is sufficient to show that Moore "disregard[ed] that risk by failing to take reasonable measures to abate it" is a less straightforward inquiry. *See Farmer*, 511 U.S. at 847; *see also Hyatt v. Thomas*, 843 F.3d 172, 180 (5th Cir. 2016) ("[W]e cannot say that the law is established with any clarity as to what those measures must be." (internal quotations omitted)).

---

[6] While Hulsey also initially alleged that Moore had him assaulted, his response to the questionnaire appears to retract that allegation or at least admit it is mere speculation. In any case, on appeal Hulsey argues only that Moore consciously disregarded the risk by pressuring Hulsey to continue recording the suspect inmate and by breaking his promises to protect Hulsey.

The magistrate judge held that Hulsey's allegations do not show that Moore "turned a blind eye" to the risk of serious harm, stressing that Moore appeared concerned about Hulsey's safety because he promised to protect Hulsey, allowed Hulsey to visit with him in his office, and allowed Hulsey to stay in protective custody. But this court has "previously held that taking some reasonable precautions does not mean the officer, on the whole, behaved reasonably." *Converse*, 961 F.3d at 779.

As the Third Circuit has explained, "placing an informant in [segregation] does not automatically shield officials from suit." *Bistrian v. Levi*, 696 F.3d 352, 368 (3d Cir. 2012), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). Rather, failure to take additional precautions necessary to protect a vulnerable inmate in protective custody may show deliberate indifference. *See id.* (recognizing that deliberate indifference "to a particular risk that an informant faces while in [segregation]" may support a failure-to-protect claim); *see also Lewis v. Siwicki*, 944 F.3d 427, 433–34 (2d Cir. 2019) (finding adherence to rigorous safety procedures did not preclude a finding of deliberate indifference where defendants failed to take other available, reasonable protective measures). Here, Hulsey has adequately alleged that Moore failed to take additional reasonable measures beyond keeping him in protective custody.

Specifically, Hulsey claims Moore failed to ensure an officer was monitoring his tank at all times, and permitted his assailant to be housed in the same tank. Both allegations can support a finding of deliberate indifference. First, courts have considered whether defendants have at least attempted to conduct continuous surveillance in evaluating whether defendants acted with deliberate indifference. *See, e.g.*, *Hyatt*, 843 F.3d at 179 (finding official responded reasonably to risk of suicide in part because official placed at-risk inmate under *continuous* though imperfect video surveillance); *Brown v. Harris County*, 409 F. App'x 728, 729–31 (5th Cir. 2010) (per

curiam) (finding official responded reasonably to risk of attack in part because official had at-risk inmate move mattress where it would be within official's view at all times); *Short v. Smoot*, 436 F.3d 422, 428–29 (4th Cir. 2006) (explaining officials respond reasonably to risk of suicide by placing detainees in video-monitored cells).

Second, housing arrangements that endanger a vulnerable inmate may also support a finding of deliberate indifference. *See Makdessi v. Fields*, 789 F.3d 126, 136 (4th Cir. 2015) (explaining defendants may be liable for doing nothing despite knowing that "the undisputedly vulnerable [plaintiff] shared a cell with an undisputedly aggressive gang member"); *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) (describing the "common fact pattern found in our failure to protect cases" of "deliberate indifference arising out of improper cell assignments"); *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015) (holding that officials were obligated "to assess the reported danger" the plaintiff's threatening cellmate posed "and to take reasonable steps to address it if they found it to be a real one"). In one analogous case, allowing a known informant to be near other inmates he cooperated against in a recreation yard within protective custody was more than sufficient to allege deliberate indifference. *Bistrian*, 696 F.3d at 368–70.

Finally, Moore's shortcomings in failing to provide additional surveillance and allowing a threatening inmate near Hulsey are further compounded by Moore persuading Hulsey to continue putting himself at risk by promising protection. This is sufficient to meet Hulsey's burden to allege that Moore failed to take reasonable measures to abate the risk. In sum, we find Hulsey alleged that Moore was deliberately indifferent to a substantial risk of serious harm. We therefore VACATE the judgment dismissing Hulsey's failure-to-protect claim against Moore and VACATE the award of a strike under 28 U.S.C. § 1915(g). *See Brown v. Megg*, 857 F.3d 287, 288 (5th

Cir. 2017) (holding that "a strike does not issue when only some claims are dismissed on section 1915(g) grounds").

**2.**

Assuming Hulsey has preserved his failure-to-protect claims against Bishop, Trawick, and Cowan, we find the magistrate judge correctly dismissed those claims.

"Supervisory officials are accountable for their own acts of deliberate indifference and for implementing unconstitutional policies that causally result in injury to the plaintiff." *Alderson*, 848 F.3d at 420. As to Bishop's personal involvement, Hulsey states that Bishop "had knowledge of the operation from day one" but explains neither how Bishop would have inferred other inmates were aware of the operation, nor how Bishop disregarded the risk. Similarly, Hulsey states that Bishop was aware of the hit previously placed on Hulsey but does not explain how Bishop disregarded this risk. In short, the facts are insufficient to allege Bishop acted with deliberate indifference. Likewise, Hulsey's conclusory claim that "[a]ny policies that exist would allow me to be in that tank under those circumstances without 24/7 supervision can't be constitutional" is insufficient to allege that Bishop implemented an unconstitutional policy.

As the magistrate judge correctly noted, Hulsey's claims against Trawick are similar to those made against Moore, but they lack the factual support crucial to finding deliberate indifference. More specifically, Hulsey does not allege that Trawick learned the recording device was discovered, was personally made aware of Hulsey's concerns, pressured Hulsey to continue cooperating with the APD, or made promises to protect Hulsey. Finally, as to Cowan, the magistrate judge correctly found that Hulsey's bare allegation that Cowan oversaw the mission—without facts about what

Cowan did or did not do in connection with his safety—was insufficient to plausibly support a claim.

**3.**

Lastly, we find that the magistrate judge did not err in denying Hulsey another chance to amend his complaint, or in proceeding without a *Spears* hearing. "Before dismissing a pro se litigant's case for failure to state a claim, a district court ordinarily must give the litigant an opportunity to amend his complaint to remedy the deficiencies, which is primarily done by conducting a [*Spears*] hearing . . . or requesting a more definite statement through a questionnaire." *Graves v. Cain*, 734 F. App'x 914, 915 (5th Cir. 2018) (per curiam) (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)). Here, the magistrate judge developed Hulsey's allegations by soliciting his responses to a questionnaire, and permitted Hulsey to supplement his complaint with additional claims. Providing a *Spears* hearing or additional leave to amend was not required under these circumstances.

**III.**

In sum, we VACATE the judgment dismissing the failure-to-protect claim against Moore and REMAND for further proceedings consistent with this opinion. We therefore VACATE the award of a strike under 28 U.S.C. § 1915(g). We AFFIRM the judgment dismissing all remaining claims.